PEOPLE OF THE TERRITORY OF GUAM,
Appellants

v.

GUAM FEDERATION OF TEACHERS,
LOCAL NO. 1581, CONRAD STINSON, et al.,
Appellees.

Civil Case No. 122A and 125A
District Court of Guam, Appellate Division
March 14, 1978

DUENAS, WONG and SMITH, District Judges
DUENAS, Presiding Judge.

- - - - - - -

- - - - - - -

The above-captioned cases deal with related issues of fact and law, and the court believes that a consolidated opinion is better suited for these appeals. First, a brief rendition of the facts will be necessary to put these disputes in their proper sequence.

FACTS RELATING TO APPEAL #122A (Super.Ct. #1389-75)

During 1972, representatives of the teachers union and the school board negotiated a collective bargaining agreement entitled "Three Year Agreement Between the Territorial Board of Education and the Guam Federation of Teachers, Local No. 1581, AFT." After this agreement was executed by the representatives, it was ratified by the Board of Education and approved by the Governor of Guam on October 3, 1972. Certain provisions in the agreement limited class sizes and teaching assignments. A provision also stated that the agreement was to remain in effect until June 13, 1975 and would then remain in effect indefinitely if new negotiations had been entered into by the parties in 1975 and a new contract had not been ratified.

During the summer of 1975, after the negotiations had begun, P.L. 13-37 was enacted with certain provisions in

conflict with the collective bargaining agreement dealing with class sizes and teaching assignments. On August 21, 1975, the Governor of Guam issued Executive Order No. 75-38 reaffirming the authority of the Board of Education as a policy making body and stating that it should use its best judgment in supervising the public school system.

In response to these new provisions increasing class sizes, certain teachers refused to accept additional students into their classes. The Superior Court found that the collective bargaining agreement was a valid contract and was to remain in effect until a new contract was ratified. The Court also ruled that the acts of the teachers' union [not] to accept additional students was not a strike as set forth in Section 4376 of the Government Code of Guam. Finally, the Court declared that P.L. 13-37:39 was void as an impairment of contract under §29(b) and §5(j) of the Organic Act of Guam and that Executive Order 75-38 did not abrogate the terms of the Three Year Collective Bargaining Agreement. (Decisions dated September 5, 1975 and September 15, 1975).

FACTS RELATING TO APPEAL #125A (Super.Ct. #1816-75)
On November 18, 1975, the Governor of Guam declared a financial emergency in the public school system and issued Executive Order No. 75-45 which suspended certain provisions of an October 1, 1972 collective bargaining agreement between the Territorial Board of Education and the Guam Federation of Teachers. More specifically, the Executive Order directed the education board and the teacher staff to increase class sizes and restrict preparation periods to one per day. After this order was released, the Guam Federation of Teachers obtained a preliminary injunction against the enforcement of this Order. In addition, the Superior Court issued a mandatory injunction requiring the Board of Education to comply with all aspects of the 1972 collective bargaining agreement. (see Preliminary Injunction, dated December 23, 1975).

FINDING OF FACTS AND LAW
The parties seem to view these disputes as mainly centering on an impairment of contracts issue. It is argued by the teachers' union that the 1972 collective bargaining agreement is still in force and any efforts by the Governor, the education board, or the legislature to change these terms is a violation of Section 5(j) of the Organic Act, 48 USC 1421b(j) which deals with impairment of contracts. The government responds that the 1972 agreement is invalid as an illegal delegation of governmental authority to supervise the schools and therefore that the 1975 executive order should not have been enjoined. Further, the government urges on appeal that

205

the activities of the teachers' union in allegedly refusing to accept additional students was a strike in violation of Section 4376 of the Government Code of Guam.

I.

We agree with the Superior Court that in some instances a collective bargaining agreement should bind the government (barring some governmental emergency which makes its provisions unreasonable to follow). However, the provision in the collective bargaining agreement which states that the agreement shall remain in effect indefinitely until (and if) a new contract is ratified must be stricken as an illegal delegation of power. Supervision and control of the territorial departments (including the Board of Education) clearly rests with the Governor of Guam. 48 USC 1422 (amended in 1968 by Public Law 9-497). If these supervisory powers could be forever suspended by a 1972 collective bargaining agreement, flexibility and responsiveness in the administration of the school system would be effectively destroyed; unless the Guam Federation of Teachers gave its approval, the government would be unable to introduce any inconsistent provision into the law no matter how much it was needed to effectively deal with problems of the school district.

The Superior Court's mandatory injunction sanctioned this illegal delegation of powers from the government to the teacher's union when it ignored Section 4411 of the Government Code (stating that "[g]overnment management officials shall retain the right and responsibility, in accordance with applicable law and regulations to ... (d) determine the methods, organization, and assignment of personnel for the conduct of operations, including necessary actions in emergency situations"). Cf. Jefferson Elementary School District v‡ Bent, 116 Cal. Rptr. 554 (1974) and Grasko v. Los Angeles Board of Education, 31 Cal. App.3d 290, 107 Cal. Rptr. 334 (1973).

Although supervision of education systems differs between California and Guam, the above cited California cases are instructive when they state that the board of education of a district cannot contract away its responsibility to determine policy and conditions within the schools. Here, as in Jefferson Elementary School District and Grasko we have a situation where:

"Various provisions of the Education Code [here the Organic Act of Guam and the Government Code] mandate that the governing board of [the] school district establish and administer rules and regulations with regard to the duties of teachers, the organization of the schools, and

206

the administration of educational policy. The agreement in the instant case prohibits the Board from unilaterally exercising its judgment and discretion in just such matters, e.g., teaching hours, class sizes, [etc.]. In this context, it makes no difference whether the agreement was a binding contract or merely proposals for adoption by the Board. The Board exceeded its authority by either ratifying a contract or adopting resolutions which required it to get prior written approval [here a newly ratified agreement] from the [teacher's union] before making changes in the terms of the contract, agreement or regulations." (Jefferson Elementary School District, 116 Cal. Rptr. at 559).

To give the agreement full effect after June 13, 1975 when the contract was scheduled to expire would be unreasonable for it would usurp the power of the government to supervise the schools. In effect, the Superior Court's ruling has transferred over to the teachers' union this power for an indefinite period of time. Presumably, the agreement would still be valid and binding even into the next century unless the teachers were willing to ratify a new contract.

Finally, in D.C. Appeal #125A (Super.Ct. #1816-75) the Superior Court totally ignored uncontradicted evidence that there was a financial emergency within the school system where there were insufficient funds to pay enough teachers to satisfy the 1972 agreement regarding class size and preparation periods. (RT 22-36, 36 to 48). Even had the contract been valid and binding after it was due to expire, the Superior Court seems to have totally discounted this testimony without stating its reasons for finding that there was no emergency to justify an alteration of the agreement. (See Rules 65(d) of the Rules of Civil Procedure for the Superior Court of Guam).

II.

The Superior Court also committed error in ruling that the actions of the teachers' union in turning away students did not constitute a strike in violation of §4376 of the Government Code. It is irrelevant whether the teachers' union was "insulated by the collective bargaining agreement," or "whether the chaotic condition . . . was generated by administrative guidelines and legislative intervention," (as the September 15, 1975 decision seems to be based on at page 4). Even if the collective bargaining agreement somehow had been in effect in September of 1975, the validity of such an agreement cannot be used as a mantle to excuse the teachers' actions which clearly resulted in a slowdown and retardation of work in violation of the orders promulgated by the Director of Education.[1] See

207

Board of Education v. New Jersey Education Association, 53 N.J. 29, 247 A.2d 867, 871-872, (1968). Cf. 37 A.L.R.3d 1150 and 48 Am.Jur.2d 1361. It is also argued that the retardation of work was not a "concerted action" and therefore not really a strike. Uncontradicted testimony shows that the President of the teachers' union advised teachers to honor only the class ratios under the terms of the 1972 agreement, regardless of instructions to the contrary by the Director of Education. (Appeal #122A [Super.Ct. #1389-75] RT 103-107; Exhibits 2 and 3). Also six principals or vice principals testified at length as to the disruption throughout the school system. (RT 16, 42, 61, 69, 84, 92).

## III.

Finally, we do not agree with the appellees that these cases have become moot for it is clear that the injunction in question still has continuing effect on negotiations between the union and the government. See Grasko, supra, 107 Cal. Rptr. at 340-341. Both Parties suggest that the court should take judicial notice of certain additional facts not contained in the record. However, these facts would have no affect on our finding that to give the perpetuity provision of the 1972 agreement valid effect would result in an illegal delegation of the government's authority to supervise and control the school system.

Based on the above, we find that the 1972 collective bargaining agreement between the teachers' union and the Government of Guam is no longer valid and binding and that the Superior Court erred in ordering a mandatory injunction requiring the Board of Education to comply with all aspects of the 1972 Agreement, despite Executive Order No. 75-45. we find also that the Superior Court erred in finding that the activities of the teachers' union did not constitute a strike in violation of Section 4376 of the Government Code.

It is ordered that the denial of the temporary restraining order in Civil Case No. 1389-75 (D.C. Appeal #122A) be reversed and that the cause be remanded to the Superior Court for action consistent with this opinion. It is also ordered that the mandatory injunction issued in Civil Case No. 1816-75 (D.C. Appeal #125A) be dissolved.

REVERSED

- - - - - - -

[1]The union has suggested that Public Law 75-38 represents an illegal attempt by the Legislature to supervise and control

the school system because the Organic Act of Guam clearly vests such power in the Governor. 48 USC 1422. However, it seems clear that the actions of the teachers' union were in direct violation of orders promulgated by the Department of Education (regardless of whether these acts were also in violation of the Public Law). Also, the union does not attempt to explain how the Department of Education should be expected to honor the 1972 collective bargaining agreement when the legislature failed to appropriate the funds with which to hire sufficient teachers to keep class sizes below the prescribed maximum.